IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KEENON A. ROBERTSON,

               Petitioner,

    vs.

SCOTT FRAKES, Director of Nebraska
Department of Correctional Services;

               Respondent.

**8:17CV201**


**MEMORANDUM
AND ORDER**

This matter is before the court on Petitioner Keenon A. Robertson's ("Petitioner" or "Robertson") Petition for Writ of Habeas Corpus. (Filing No. 1.) For the reasons that follow, Petitioner's habeas petition is dismissed with prejudice.

# I. CLAIMS

Summarized and condensed, and as set forth in my previous progression order (filing no. 7), Petitioner asserted the following claims that were potentially cognizable in this court:

Claim One:        Petitioner was denied his rights to present a complete defense, to a fair trial, to due process, to equal protection, and to effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution *because* (1) trial counsel failed to object and argue that the trial court violated Petitioner's "U.S. Constitution and federal law rights" when it failed to give a "defense of others" jury instruction; (2) appellate counsel failed to argue on direct appeal that Petitioner

was prejudiced "under the U.S. Constitution and federal law" when the trial court failed to give the "defense of others" jury instruction; and (3) appellate counsel failed to argue on direct appeal subpart (1).

Claim Two:      Petitioner was denied his rights to a fair trial, a complete defense, due process, and effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution *because* trial counsel failed to move for a mistrial after discovering juror misconduct.

Claim Three:      Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution *because* (1) trial counsel failed to raise that Petitioner's constitutional right to speedy trial was violated; (2) appellate counsel failed to argue on direct appeal subpart (1); and (3) appellate counsel failed to argue on direct appeal that Petitioner's constitutional right to speedy trial was violated.

## II. BACKGROUND

### A. Conviction and Sentence

The court states the facts as they were recited by the Nebraska Court of Appeals in *State v. Robertson*, Case No. A-12-204, 2013 WL 599895 (Neb. App. Feb. 19, 2013) (Memorandum Opinion) (affirming Robertson's convictions and sentences on direct appeal). (Filing No. 11-5.) *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

On April 2, 2010, Robertson was sitting in his car talking with his neighbor in her driveway when shots were fired into the back of his car. The bullets shattered the back window, and a bullet lodged into the tire of the car.

On Easter Sunday, April 4, 2010, Buomkuoth Tang was driving a white Mazda in Omaha, Nebraska, on Ida Street, headed toward 37th Street. Larry Brye, Terrance Pinneke, and Dontevous Loyd were passengers in the vehicle. Tang could not turn onto 37th Street because another car blocked the intersection. A man in a red shirt opened fire on Tang, Brye, Pinneke, and Loyd. Tang attempted to reverse the Mazda down the street, but crashed into a tree. All four men sustained various injuries. Tang was hospitalized for 40 days. Eyewitnesses to the shooting identified Robertson as a suspect.

On May 19, 2010, the State charged Robertson with four counts of attempted second degree murder and four counts of use of a deadly weapon to commit a felony.

### 1. State's Motion to Continue Trial

At a pretrial conference in December 2010, the court noted concerns about the age of the case under Nebraska's speedy trial statutes and scheduled a trial date 11 days later. At a hearing on the State's motion to continue, the State argued that it had good cause for a continuance under Neb. Rev. Stat. § 29–1207(4)(f) (Cum.Supp.2012), because of the exceptional nature of the case and the fact that the assigned prosecutor had been on maternity leave since late October.

Robertson objected to the continuance, arguing that delaying trial violated his right to a speedy trial. The trial court found good cause and exceptional circumstances to continue the trial because of the seriousness of the charges and the prosecutor's situation. The trial court set the trial date for April 2011.

On April 6, 2011, the State filed a final amended information charging Robertson with one count of discharging a firearm at an occupied house, occupied building, or occupied motor vehicle and one count of use of a deadly weapon to commit a felony. Robertson filed a motion to discharge the matter because it violated his right to a speedy trial. The trial court overruled the motion, and the trial proceeded. Robertson did not appeal the trial court's ruling on the motion to discharge.

## 2. Trial Testimony

At trial, the State presented testimony from a number of police officers. According to this testimony, police officers responded to two separate, but geographically close, crime locations. The initial call was for shots fired in the area of 36th and Ida Streets; the second call was for a shooting victim in the area of 6900 North Ridge Drive.

According to the testimony, in the area of 6900 North Ridge Drive, an officer observed several people standing in the front yard attending to a shooting victim who had a gaping wound in his right stomach area. Pinneke was aiding Tang, the victim. The west side of North Ridge Drive was searched, but no firearms or shell casings were located in that area.

The officer observed a white Mazda that was "impaled into a tree." The Mazda was mostly damaged in the rear, as if it had run into the tree backward. The vehicle had about seven bullet holes in it, and the windshield was smashed. West of the Mazda, another officer encountered another shooting victim, Loyd, who was being tended to by Brye. Loyd described what had happened and stated that he could identify the shooter.

The lead crime scene investigator testified that 19 shell casings were found along both 37th and Ida Streets. He also testified that the way the glass was broken on the Mazda's windshield was consistent with someone firing a shot at the windshield, rather than someone firing a shot from inside the vehicle.

Eyewitnesses reported that the shooting suspect had been wearing a red shirt and was last seen heading toward the area of a middle school. An officer located a red shirt directly north of the school. Another officer located a firearm just south of 37th and Ida Streets.

A detective received a report from a witness that someone in the Mazda had also opened fire. He testified that the police department searched for a second weapon, but was unable to locate one.

Laboratory technicians testified that only one weapon was located, a Chinese-manufactured SKS 7.62–mm x 39–caliber semiautomatic rifle that holds 30 rounds of ammunition and requires the shooter to pull the trigger between each shot. Eight bullet holes were identified in the Mazda, which holes indicated that the bullets were fired into the Mazda from the outside.

Several residents of the neighborhood testified; one specifically identified Robertson as the assailant and further testified that he saw Robertson shooting a weapon and running toward the Mazda. Other witnesses testified that a man in a red shirt was shooting at the Mazda. The testimony was conflicting as to whether anyone from the Mazda fired back. There was also conflicting evidence whether shots from more than one firearm could be heard.

Robertson's next-door neighbor, Latia Blair, testified that on April 4, 2010, everyone was outside having cookouts for Easter, including children and grandparents. According to Blair, "At least [Robertson's] mom, everybody that

lived there. Friends, family. So about 10, 15 people [were at Robertson's house]." The occupants of the Mazda testified generally that they had been "hanging out" together on April 4 at Loyd's house around Redman Street. They then went to a fast-food restaurant. While heading back to Loyd's house, they ended up on Ida Street. Loyd testified that Tang liked to "mess with people" in that area. Loyd further testified that he told Tang not to turn onto that street, but Tang did anyway. Loyd denied there were any weapons in the Mazda. At the intersection of 37th and Ida Streets, a car blocked their path and then they heard gunshots. Tang put the Mazda in reverse and began driving down the street until he ran into a tree. Pinneke was struck by a bullet in the hip, and Tang was struck in the abdomen. Tang was hospitalized for 40 days.

Tang's testimony was consistent with the above except he claimed that they were on their way to play basketball and that is why they ended up on 37th and Ida Streets.

Blair, along with several other neighbors, also corroborated an earlier driveby shooting that occurred on April 2, 2010. Blair testified that she was parked in front of her house talking to Robertson, who was sitting in his car in her driveway, when shots were fired toward his car. She said the shots hit the rear of Robertson's car. She was unable to identify the assailant. After the shots were fired, Robertson backed out of her driveway and told her to go inside. Although the police received calls to the 911 emergency dispatch service at the time of that incident, no one connected it to Robertson's investigation until Robertson's mother informed the police of the incident after they had been investigating for over a month. Following this report, police processed Robertson's car and found a bullet hole.

Robertson testified that the individuals involved in the driveby shooting on April 2, 2010, were the same people who came back on April 4. He said he knew it

was Tang who had been shooting at him on April 2 after seeing him in court. Robertson testified that following the April 2 shooting, he became concerned about his safety as well as the safety of his family, so he obtained an assault rifle, which he hid on the side of his house.

Two days later, on Easter 2010, Robertson noticed the individuals who were involved in the previous driveby shooting when they pulled up onto the street real slow. Robertson then saw the "African guy" in the Mazda pull out a gun. He said that he saw three shots fired and that he then ran and grabbed his weapon and began firing. He testified that at the time he was shooting, he was afraid, fearing for his own life and his family. At the time, his mother, aunt, grandmother, grandfather, 3-year-old daughter, sister, sister's children, and cousins were at his mother's home. After he finished firing, he did not continue chasing the victims, but instead, he ran away. He did not talk to the police because he did not want to go back to the scene of the crime for fear that more people were out looking for him.

### 3. Jury Instructions

At the close of evidence, the trial court determined that it would instruct the jury on self-defense, but not on defense of others. Robertson's counsel objected to the court's exclusion of the defense of others instruction, arguing that both Robertson and Blair testified that many people were around, including children. Blair testified that children were outside in Robertson's yard, and Robertson testified that his family and children were present. Counsel argued that Robertson testified that shots were fired in his general direction, which was the same direction where others were present. He argued that the circumstances on April 4, 2010, combined with the shooting on April 2, warranted Robertson's belief that deadly force was imminent to himself and his family. The trial judge rejected counsel's arguments and refused to instruct on defense of others.

## 4. Jury Conduct

During deliberations, the jury foreman sent a note to the judge asking what to do if a juror visited the scene of the crime. The juror appeared before the trial court judge and admitted his actions. The juror stated that he visited the scene both at 6 p.m. and after dark in order to better understand the undulation of the area. According to the juror, he had been mistaken as to where the shooter had been standing, but understood it a little bit better after visiting the scene. He denied relaying the circumstances of his visit to other jurors; rather, he explained that his visit came up when he told the rest of the jury that he knew a particular hill was steep because he had driven out and visited it. The rest of the jury interrupted him and told him not to tell them anything else. He also admitted that he later realized that the steepness of the hill did not have anything to do with the claims at issue.

The trial court judge dismissed the juror and informed the jury that he was excusing the juror who visited the scene of the crime. He told them that the previously dismissed alternate juror had rejoined the jury. The alternate juror said that he had been able to follow the judge's instructions and had not discussed the case with anyone. The trial court judge instructed the jury to start its deliberations over to give the alternate juror a chance to fully participate. The case was then resubmitted to the jury.

Robertson's counsel made a record that he had discussed the issues relating to the jury with Robertson. Robertson's counsel said he told Robertson that they could ask for a mistrial but that they instead decided to continue with the current jury. Robertson's counsel said that Robertson consented. The jury ultimately found Robertson guilty of discharging a firearm at an inhabited house, building, or vehicle and of use of a deadly weapon to commit a felony.

## 5. Motion for New Trial

Robertson filed a motion for a new trial, arguing that irregularities in the proceedings prevented him from having a fair trial for the following reasons: (1) The trial court improperly excused and recalled the alternate juror, (2) at least one juror committed misconduct, (3) the evidence did not sustain the verdicts, and (4) he did not consent to allowing jury separation without sequestration. He argued that under Nebraska law this entitled him to a presumption of prejudicial jury misconduct. The State asked the court to allow it to present evidence to overcome the presumption of prejudice.

The court denied Robertson's first three grounds for a new trial and scheduled a hearing on the fourth ground. At a hearing on the issue of jury separation, 10 of the 12 jurors testified, at which time Robertson's counsel had an opportunity to cross-examine them. The jurors stated that they abided by the judge's instructions and did not discuss the case with anyone else or view any outside media information. The parties stipulated that they had both interviewed the two absent jurors and that those jurors would have given the same testimony as the others had they been present.

Robertson's stepsister testified at that hearing that during a bathroom break, a juror asked her about the nature of the dispute between Robertson and the victims. She testified that she told the juror she did not know because she was not present at the time. The juror admitted having some contact in the bathroom with Robertson's stepsister, but said the conversation was just a cordial "hello" and did not have any substance.

The court found the State met its burden of proof beyond a reasonable doubt that Robertson was not prejudiced as a result of the jury's separation without sequestration and denied the motion for new trial.

6. Sentencing

The judge sentenced Robertson to a total of 25 to 60 years in the Nebraska Department of Correctional Services.

**B. Direct Appeal**

Robertson appealed his convictions and sentences to the Nebraska Court of Appeals on March 12, 2012, and was represented by different counsel than at trial. (Filing No. 11-1 at CM/ECF p.3; Filing No. 11-9 at CM/ECF p.4.) In his brief, Robertson assigned that the state district court erred in (l) sustaining the State's motion to continue the trial, (2) refusing to give a defense of others instruction to the jury, (3) finding that the State met its burden in showing there was no prejudice to Robertson after allowing the jury to separate without sequestration, and (4) imposing an excessive total sentence. Robertson also asserted that his trial counsel was ineffective for failing to move for a mistrial upon discovering juror misconduct and that the culmination of errors warranted a new trial. (Filing No. 11-5 at CM/ECF p.5; Filing No. 11-9 at CM/ECF pp.5–6.)

The Nebraska Court of Appeals rejected Robertson's claims of trial court error and determined that the record was insufficient to review his claim of ineffective assistance of trial counsel. (Filing No. 11-5.) With respect to Robertson's challenge to the trial court's decision to grant the state's motion to continue, the court treated it as a challenge to the denial of his motion to discharge. Because Robertson failed to appeal the denial within 30 days, the court found it lacked jurisdiction and declined to address the issue. (*Id.* at CM/ECF p.6.) Regarding Robertson's rejected jury instruction, the court concluded that based on the evidence adduced at trial, the trial court erred in failing to give a defense of others instruction. (*Id.* at CM/ECF p.8.) However, the court found no prejudice

resulted from the error since "the elements of [defense of others and self-defense] are fundamentally identical and . . . the jury's factual findings effectively rejected Robertson's claim of self-defense." (*Id*. at CM/ECF p.9.) The court also concluded that the State had proved that no prejudice resulted from the jury not being sequestered and Robertson's sentences were not excessive. (*Id*. at CM/ECF pp.12–13.) As the court found no merit to Robertson's assigned trial court errors, the court determined there was no cumulative error effect warranting a new trial and affirmed Robertson's convictions and sentences. (*Id*. at CM/ECF p.13.)

Thereafter, Robertson, through counsel, petitioned for further review, arguing that the Nebraska Court of Appeals erred in (1) not addressing his argument that the state district court erred in granting the State's motion to continue and (2) finding that no prejudice resulted from the state district court's failure to give a defense of others instruction. (Filing No. 11-11.) The Nebraska Supreme Court denied the petition and issued the mandate on May 1, 2013. (Filing No. 11-1 at CM/ECF p.4.)

## C. Postconviction Action

Robertson filed a verified motion for postconviction relief in the state district court on December 5, 2013. (Filing No. 11-25 at CM/ECF pp.5–28.) Robertson alleged three claims: (1) that the state district court erred in not giving a defense of others instruction and that his appellate counsel was ineffective in failing to prove that the lack of such an instruction prejudiced him; (2) that his appellate counsel was ineffective for not raising his trial counsel's ineffectiveness for failing to appeal from the denial of the motion to discharge; and (3) that his appellate counsel was ineffective for not petitioning for further review of the claim that his trial counsel was ineffective for failing to move for a mistrial after discovering juror misconduct. (*Id*.)

The state district court denied Robertson's postconviction motion without an evidentiary hearing. (*Id.* at CM/ECF pp.48–50.) Robertson moved to alter or amend the judgment which the state district court ultimately denied after some intervening appeals that bear no relevance here. (*Id.* at CM/ECF pp.51–68, 74.) Robertson appealed to the Nebraska Supreme Court arguing that the state district court erred in denying his postconviction motion because (1) his appellate counsel was ineffective for not convincing the Nebraska Court of Appeals that Robertson was prejudiced by the state district court's failure to give a defense of others instruction, (2) his appellate counsel was ineffective for not arguing that his trial counsel was ineffective for failing to timely appeal from the denial of his motion for discharge, and (3) that his trial counsel was ineffective for failing to move for a mistrial after discovering juror misconduct. (Filing No. 11-8 at CM/ECF p.4; Filing No. 11-16.) Additionally, Robertson argued that the state district court erred in denying his postconviction motion without giving him an opportunity to amend, in denying his motion to alter or amend, and in failing to appoint him postconviction counsel. (Filing No. 11-8 at CM/ECF p.4; Filing No. 11-16.)

In a published opinion, the Nebraska Supreme Court concluded that all of Robertson's claims were without merit and, thus, they were properly denied without an evidentiary hearing. (Filing No. 11-8.) After denying Robertson's subsequent motion for rehearing, the mandate issued on January 4, 2017. (Filing No. 11-4 at CM/ECF p.4; Filing No. 11-18; Filing No. 11-19.)

**D. Habeas Petition**

Petitioner timely filed his Petition in this court on June 8, 2017. (Filing No. 1.) In response to the Petition, Respondent filed an Answer, a Brief, and the relevant state court records. (Filing Nos. 11, 12, 13, & 14.) Robertson did not file a brief in response to Respondent's Answer, and Respondent filed a Notice of Case

Submission notifying the court that no reply brief would be filed. (Filing No. 15.) This matter is fully submitted for disposition.

## III. STANDARDS OF REVIEW

### A. Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

    (A)    the applicant has exhausted the remedies available in the courts of the State; or

    (B)    (i)    there is an absence of available State corrective process; or

            (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

13

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454–55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation marks omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d

924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n.1.

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## B. Nebraska Law Relevant to Procedural Default

Under Nebraska law, you don't get two bites of the post-conviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased."); *State v. Filholm*, 848 N.W.2d 571, 576 (Neb. 2014) ("*When a defendant's trial counsel is different from his or her counsel on direct appeal*, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.") (emphasis added).

Moreover, a person seeking post-conviction relief must present his or her claim to the district court or the Nebraska appellate courts will not consider the claim on appeal. *State v. Deckard*, 722 N.W.2d 55, 63 (Neb. 2006) (denying post-conviction relief in a murder case and stating: "An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.")

## C.      Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405–06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must

presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* Indeed, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496–97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under the Antiterrorism and Effective Death Penalty Act (AEDPA) must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

## D.     The Especially Deferential *Strickland* Standard

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for offenders to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687–88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Strickland*, 466 U.S. at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. *Id*. at 123. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id*. (internal quotation marks and citations omitted).

*Strickland* applies equally to appellate counsel, and appellate counsel is entitled to the "benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1153 (2016) (a "fairminded jurist" could have concluded that repetition of anonymous tip in state-court cocaine-possession trial did not establish that the uncontested facts it conveyed were submitted for their truth, in violation of the Confrontation Clause, or that petitioner was prejudiced by its admission into evidence, precluding federal habeas relief under AEDPA; petitioner could not establish that petitioner's appellate counsel was ineffective, as appellate counsel was entitled to the "benefit of the doubt").

## IV. DISCUSSION

### A. Claim One

Robertson claims he was denied his rights to present a complete defense, to a fair trial, to due process, to equal protection, and to effective assistance of

counsel under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution because (1) trial counsel failed to object and argue that the trial court violated Petitioner's "U.S. Constitution and federal law rights" when it failed to give a "defense of others" jury instruction; (2) appellate counsel failed to argue on direct appeal that Petitioner was prejudiced "under the U.S. Constitution and federal law" when the trial court failed to give the "defense of others" jury instruction; and (3) appellate counsel failed to argue on direct appeal subpart (1).

With respect to subparts (1) and (3), Robertson concedes that he did not present either of these claims in the state courts and that he cannot do so now as those claims would be procedurally barred. (Filing No. 1 at CM/ECF pp.10, 18.) Indeed, subpart (1) is procedurally defaulted because Robertson failed to raise this ineffective assistance of trial counsel claim on direct appeal. *See Filholm, supra.* *See also Abdullah v. Groose*, 75 F.3d 408, 412–13 (8th Cir. 1996). Subpart (2) is procedurally defaulted because Robertson did not present this claim in his motion for postconviction relief. Robertson cannot raise the issue in a successive postconviction motion. *See Ortiz, supra.*

Regarding subpart (2), to the extent Robertson is alleging more than an ineffective assistance of appellate counsel claim, he did not raise any such claims in his postconviction motion and, thus, such claims are procedurally defaulted. (*See* Filing No. 11-25 at CM/ECF pp.5–28.) Liberally construing subpart (2), Robertson alleges an ineffective assistance of appellate counsel claim based on his appellate counsel's failure to properly argue on direct appeal that he was prejudiced by the trial court's failure to give the defense of others jury instruction. Robertson properly exhausted this claim in the state courts and I will address the claim on the merits.

As set forth above, the two-prong test set forth in *Strickland v. Washington*, *supra*, applies to Robertson's ineffective assistance of appellate counsel claim. In

addressing this claim, the Nebraska Supreme Court reasoned and determined as follows:

> When this case was on direct appeal, Robertson's counsel assigned and argued that the trial court erred in failing to give a defense of others jury instruction. The Court of Appeals agreed. It reasoned, however, that because the jury rejected Robertson's self-defense claim, the jury necessarily would have rejected a defense of others claim, so the Court of Appeals concluded Robertson could not show he was prejudiced by the failure to give the instruction. In his postconviction motion, Robertson alleged his appellate counsel was ineffective because he failed to "demonstrate the requisite level of outcome-changing prejudice" to the Court of Appeals.
>
> Liberally construed, Robertson's postconviction motion alleges that had appellate counsel made different legal arguments, the Court of Appeals would have reached a different result. We conclude the files and records affirmatively show that the Court of Appeals correctly resolved the legal issue, so no legal argument posited by appellate counsel could have resulted in a different outcome. The district court properly concluded that Robertson is not entitled to an evidentiary hearing on this issue, because the files and records affirmatively show the claim is without merit.

(Filing No. 11-8 at CM/ECF pp.5–6).

Though the Nebraska Supreme Court did not refer to the *Strickland* standards by name, the court clearly found no ineffective assistance by Robertson's appellate counsel because no prejudice resulted from appellate counsel's alleged deficient performance since the Nebraska Court of Appeals reached the correct legal conclusion. (*Id.*) The Nebraska Supreme Court's ruling was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Thus, Robertson is entitled to no relief on this claim.

**B. Claim Two**

Robertson claims he was denied his rights to a fair trial, a complete defense, due process, and effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution *because* trial counsel failed to move for a mistrial after discovering juror misconduct.

Claim Two is procedurally defaulted. First, to the extent Robertson is alleging more than an ineffective assistance of trial counsel claim, he did not raise any such claim on direct appeal and is procedurally barred from raising such claims now. (*See* Filing No. 11-9). Robertson did raise the ineffective assistance of trial counsel claim on direct appeal[1] but, contrary to his argument in his petition, did not raise the claim in his postconviction motion. (*See* Filing No. 1 at CM/ECF pp.25–27; Filing No. 11-5; Filing No. 11-8; Filing No. 11-9; Filing No. 11-25 at CM/ECF pp.5–28.) Rather, Robertson alleged in his postconviction motion that his *appellate counsel* was ineffective for not petitioning for further review of the ineffective assistance of trial counsel claim after the Nebraska Court of Appeals determined that the record was insufficient to address it on direct appeal. Thus, when Robertson asserted the ineffective assistance of trial counsel claim in his postconviction appeal, the Nebraska Supreme Court determined the claim had not been presented to the district court in his postconviction motion and refused to consider it. (Filing No. 11-8 at CM/ECF p.7) ("An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief." (citing *State v. Thorpe*, 858 N.W.2d 880 (Neb. 2015)).

---

[1] Robertson did not raise this ineffective assistance of trial counsel claim in his direct appeal petition for further review to the Nebraska Supreme Court, (*see* filing no. 11-11), however the Nebraska Court of Appeals found that the record was insufficient to address the claim on direct appeal (filing no. 11-5 at CM/ECF p.11).

Because Robertson did not properly present the claim in the state courts and he is procedurally barred from doing so now, his ineffective assistance of trial counsel claim is procedurally defaulted. *See Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989) (Where a Nebraska state court rejects a claim on state procedural grounds, and issues a "'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim.")

## C. Claim Three

Robertson claims he was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments of the U.S. Constitution *because* (1) trial counsel failed to raise that Petitioner's constitutional right to speedy trial was violated; (2) appellate counsel failed to argue on direct appeal subpart (1); and (3) appellate counsel failed to argue on direct appeal that Petitioner's constitutional right to speedy trial was violated.

Robertson concedes that he did not present the claims in subparts (1) and (2) in the state courts and he is procedurally barred from doing so now. (Filing No. 1 at CM/ECF pp.33, 35). Thus, subpart (1) is procedurally defaulted because Robertson failed to raise this claim on direct appeal. *See Filholm, supra.* Subpart (2) is procedurally defaulted because Robertson failed to present this claim in his motion for postconviction relief and he cannot raise the issue in a successive postconviction motion. *See Ortiz, supra.*

Robertson argues, however, that he exhausted the ineffective assistance of appellate counsel claim in subpart (3) by arguing in his postconviction motion that his "appellate counsel had been ineffective under the 6th and 14th Amendments to the U.S. Constitution for not raising . . . on direct appeal that my trial counsel failed to file an interlocutory appeal after the trial court had denied [his] motion to

discharge." (Filing No. 1 at CM/ECF p.34); (*see also* Filing No. 11-25 at CM/ECF pp.23–26.) Contrary to Robertson's assertion, the state court records demonstrate that the claim he raised in his postconviction motion and appeal dealt only with Robertson's state statutory speedy trial right, and he did not properly raise the federal claim in subpart (3) of Claim Three in the state courts. (*See* Filing No. 11-8 at CM/ECF pp.6–7; Filing No. 11-16 at CM/ECF pp.34–52; Filing No. 11-25 at CM/ECF pp.23–26.) As such, Robertson failed to properly present subpart (3) in the state courts and he is procedurally barred from doing so now. Thus, the claim is procedurally defaulted. *See Groose*, 75 F.3d at 412–13.

**D. No Cause or Prejudice Shown to Excuse Procedural Defaults**

Robertson argues that the court may review his procedurally defaulted claims under the United States Supreme Court's decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). (Filing No. 1 at CM/ECF pp.10–12, 19, 27–28, 35–36.) In *Martinez*, the Supreme Court held that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17. The Supreme Court elaborated on and expanded this cause exception in *Trevino*. There, the Supreme Court held that *Martinez* is applicable not only in circumstances where a state requires a defendant to raise a claim of ineffective assistance of trial counsel in a state collateral proceeding, but also when a state maintains a procedural regime that amounts to such a requirement (i.e., when it is "virtually impossible" for an ineffective assistance claim to be raised on direct review). *Trevino*, 569 U.S. at 417.

Assuming, without deciding, that *Martinez* applies to federal habeas corpus cases arising from Nebraska convictions, the holding in *Martinez* does nothing to excuse the procedural default of Robertson's claims. In *Martinez*, the Court reasoned that a federal habeas court should "hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default *in an initial-review collateral proceeding*." *Martinez, 566 U.S. at 14* (emphasis added). Here, the default of Robertson's ineffective assistance of trial counsel claims at Claim One (1) and Claim Three (1) occurred, not on initial review (i.e. in his postconviction motion), but when he failed to properly raise them in his direct appeal to the state appellate courts. *See Filholm, supra. Cf. Mumin v. Frakes, 2017 WL 1131888 (D. Neb. 2017); Williams v. Kenney, 2014 WL 5107145 (D. Neb. 2014)*. Further, *Martinez* does not apply to Robertson's ineffective assistance of appellate counsel claims (Claims One (3), Three (2), and Three (3)).[2] *See Davila v. Davis, __ U.S. __, 137 S.Ct. 2058 (2017); Dansby v. Hobbs, 766 F.3d 809 (8th Cir. 2014)*.

Moreover, with respect to Claims One (1), Two, and Three (1), "[t]o overcome the default, [Robertson] must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that [Robertson] must demonstrate that the claim has some merit." *Martinez, 566 U.S. at 14*. No such demonstration has been made with respect to any of these claims.

Regarding subpart (1) of Claim One, Robertson's complaint of ineffective assistance of trial counsel related to the trial court's failure to instruct on defense of others does not present a substantial claim. The Nebraska Court of Appeals

---

[2] Also, to the extent Robertson asserts that *Martinez* and *Trevino* excuse the procedural defaults of constitutional claims other than his ineffective assistance of trial counsel claims, the *Martinez* exception does not apply. *See Dansby v. Hobbs, 766 F.3d 809, 833 (8th Cir. 2014)* (declining to extend *Martinez* exception to claims of ineffective assistance of appellate counsel and claims of trial error).

determined that the trial court's failure to give the defense of others instruction did not prejudice Robertson and Robertson's arguments to the contrary do not convince me otherwise. (*See* [Filing No. 1 at CM/ECF pp.14–18](); [Filing No. 11-5 at CM/ECF pp.8–11]()). In addition, the Nebraska Supreme Court addressed the prejudice issue in the context of Robertson's postconviction claim of ineffective assistance of appellate counsel, and the court's reasonable determination of that issue weighs strongly against a finding of a substantial ineffective assistance of trial counsel claim here. (*See* [Filing No. 11-8 at CM/ECF pp.5–6]().)

As for Claim Two, neither the record nor the law support a finding that Robertson's trial counsel performed deficiently by failing to move for a mistrial after it was discovered that one juror had visited the scene of the crime. "In determining whether counsel's conduct was [deficient], there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Allen v. United States*, 854 F.3d 428, 432 (8th Cir. 2017) (internal citation omitted). "Additionally, '[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (internal citation omitted).

In this case, juror misconduct was committed by one juror, the record does not indicate that the misconduct affected the other jury members, and that juror was replaced. (*See* [Filing No. 12-6 at CM/ECF pp.105–18]()). Additionally, Robertson's trial counsel's decision to move forward with the reconstituted jury was a strategic decision, made after consulting with Robertson and with knowledge of the relevant options. (*See* [Filing No. 12-6 at CM/ECF pp.118–19](); [Filing No. 12-7 at CM/ECF pp.25–26](), [34–35]()). Finally, the reason for Robertson's trial counsel's decision (as alleged by Robertson) was reasonable, i.e. to continue with what counsel perceived to be a favorable jury. (*See* [Filing No. 1 at CM/ECF p. 24]().) *Cf.* *Escobedo v. Lund*, 760 F.3d 863, 870–71 (8th Cir. 2014) (holding that counsel was not deficient in failing to request mistrial after trial court substituted alternate juror

for juror dismissed for misconduct after deliberations had begun where counsel's decision reflected reasonable trial strategy of taking a chance with what he perceived to be as favorable a jury as could be had). Thus, I find that Claim Two does not present a "substantial" claim of ineffective assistance of trial counsel that would warrant application of the *Martinez* exception.

Lastly, Claim Three (1) does not present a "substantial" claim of ineffective assistance of trial counsel because the record establishes Robertson's constitutional right to a speedy trial was not violated. To determine whether a federal constitutional speedy trial violation has occurred, a court considers the four factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972)—length of delay, reason for delay, the defendant's assertion of the right, and prejudice to the defendant. "Length of delay is a threshold issue, and a court must determine whether a delay is presumptively prejudicial, taking into consideration the particulars of each case." *Stewart v. Nix*, 972 F.2d 967, 970 (8th Cir. 1992) (internal quotation marks and citations omitted).

In Robertson's postconviction appeal, the Nebraska Supreme Court found that the continuance granted to the prosecution resulted in the trial being delayed by 122 days but no violation of Robertson's state statutory speedy trial right occurred. (Filing No. 11-8 at CM/ECF pp.6–7.) A delay of 122 days is not presumptively prejudicial, and, in any case, Robertson has not shown that he was prejudiced in any way by the delay. *See Jenkins v. Purkett*, 963 F.2d 1117, 1118 (8th Cir.1992) (habeas petitioner's Sixth Amendment right to speedy trial not violated because six month delay not presumptively prejudicial and petitioner failed to show he was prejudiced by delay). Furthermore, "[i]t is an unusual case in which the Sixth Amendment has been violated when the time limits under the [Nebraska] speedy trial act have been met." *State v. Hettle*, 848 N.W.2d 582, 594–95 (Neb. 2014) (citing the four-factor test for constitutional speedy trial violations

under *Barker v. Wingo*, *supra*). Neither Robertson's arguments nor anything in the record convinces me that this is one of those unusual cases.

Based on the foregoing, Robertson has not shown cause or prejudice to permit the court to review any of his procedurally defaulted claims.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).

In this case, Petitioner has failed to make a substantial showing of the denial of a constitutional right. The court is not persuaded that the claims raised in Petitioner's petition are debatable among reasonable jurists, that a court could resolve the claims differently, or that the claims deserve further proceedings. Accordingly, the court will not issue a certificate of appealability in this case.

IT IS THERFORE ORDERED that Petitioner's Petition for Writ of Habeas Corpus (filing no. 1) is dismissed with prejudice. No certificate of appealability has been or will be issued. The court will enter a separate judgment in accordance with this Memorandum and Order.

Dated this 31st day of May, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge